Good morning, Your Honor. Explain to me exactly, I'm not, I think I know, but how the $8.5 million fund works. Sure. The 8.5, in the original settlement or in the revised settlement? Well, no, I, together. I mean, is it going to be consumed? I mean... There's nothing in the record that explains that, Your Honor. The first settlement fund ostensibly would create a, it would go to vouchers for class members and... But I think the answer is that the record is just silent as to whether or not... Yes. And what will happen to whom will, if there is a remainder, to whom would it revert? At this point, if there is a remainder, it would revert, we are, we argue that it would revert to Groupon. Through, essentially by, they can draw from the second settlement fund. No, wait. Now, Your Honors... Two different things. They can draw to reimburse themselves the payments they have made. That doesn't have anything to do with the question of, after everybody's done everything and there's $2 million left, or $200 left, where does that go under the agreement? Under the, under the agreement. Well, Your Honor, I'd like to, if I could, I'd like to defer to Mr. Frank on that. I would like to take just five minutes to speak specifically on due process issues. All right. And Mr. Frank will speak to other issues. So first, the due process issues, due process issues in this case, it comes down to two points. We're asking the courts for a relatively narrow rule, and that rule is that renewed notice and hearing are required, where a settlement modification alters the allocation of class relief between and among class members, in a way that adversely affects some of them. Who's adversely affected? Any class member that doesn't want to do business with Groupon in the future. Now, that includes my client, and I'm sure it includes many other absent class members, because this is a consumer protection lawsuit, where Groupon was alleged to have violated the class member's rights. And Groupon is only one of many daily deal sites, you know, competing, so certainly there are options in the market. Class members don't have to do business with Groupon again in the future. Now, the adverse effect here is simple, because the CyPrey fund that was in the original settlement, contemplated in the original settlement, would have benefited all class members equally, although indirectly. Instead, in the amended settlement, the settling parties have discarded this indirect benefit to all class members equally, in favor of a fund which only benefits future customers of Groupon. Now, the rule we're asking for is naturally implied. How much was the amount of the CyPrey originally? Well, there's nothing reserved for, I'm sorry, there was $75,000 reserved for CyPrey in the original settlement, and that was one of the reasons the district court rejected that settlement. He said that they had chosen the charities wrong, first of all, and second of all, that the party should not have reserved $75,000 for CyPrey. Instead, what he said was that if all claims have been paid and there remains a balance in the settlement fund, then a CyPrey award is appropriate. That's at ER 92. Now, in the original settlement that the parties proposed, this second settlement fund was limited to two years. It was time limited. After that, the remainder would flow into a CyPrey fund, which would indirectly benefit all class members. Now, Rodriguez v. West Publishing says the class notice is required to contain the plan for allocation of settlement funds, and it cites a line of case law going back to 1977. So we say that if the plan for allocation changed in a way that adversely affects class members, here are class members who don't want to go back. Let me make sure I understand the facts. One, there was a separate CyPrey fund of $75,000 originally. That's eliminated after the modification. Yes, Your Honor. Two, there's a question of what happens to the remainder if there is a remainder after the second settlement fund is not exhausted by the claims. And you say that that was originally, there was a provision that if there was a remainder after the second settlement fund, it went to a CyPrey. That is correct, Your Honor. And under the amendment, you say you don't know what happens to it? Under the amendment, the second settlement fund is extended indefinitely. And to conclude, we're asking the panel to find that because the amended settlement changed the allocation of funds in that way, a way that was adverse to class members like my client and others who were unwilling to do business with the plan. But since this record is silent as to what happens to the remainder, it really is a $75,000 argument. The $75,000 was in your client's interest because it advocated for consumer rights. But we don't know what was going to happen under either. We don't know what would have been, suppose there had been a remainder after the payment of the $75,000 in CyPrey. I mean, your clients aren't being adversely affected, but they're getting full refund of their losses under the first settlement. Well, Your Honor, a full refund of their losses isn't, I would argue, the proper measurement here, because the only thing my client can get is a settlement voucher. Now, the parties originally alleged. But there was notice of that. Excuse me? There was notice of that. Of the settlement vouchers, yes. So the due process argument fails on that point. I mean, that didn't change. The CyPrey fund did. It was only the CyPrey fund. Thank you, Your Honor. Theodore H. Frank for Appellant Sean Hull. Unfortunately, Mr. Wilson has gone into my time, but I do want to correct his characterization of the first settlement. The CyPrey in the first settlement was at least $75,000. And then if there was money left over after the two separate settlement funds, there would be additional monies added to the CyPrey, which was potentially millions of dollars, given how few claims were being made the first time around. Did someone object to the CyPrey after it was in the first time? Yes. Who objected to it? I did, actually, as a class member. And that's docket number 67, which is not in the excerpts of record I came in. So you objected, the court granted your objection, and now you're complaining about that? I'm not complaining about that. I'm representing Mr. Hull, who's objecting to the valuation of the settlement, as did I. I'd like to focus my argument on the second settlement fund. It's Mr. Wilson and his client who's objecting to the lack of notice on the second time around. I just wanted to correct his characterization. But you don't object to the fact that the settlement fund doesn't use the CyPrey? That was not an objection that's made on our appeal. What we are objecting to is the characterization of the second settlement fund as a class benefit equal dollar to dollar, and thus the characterization of the total settlement fund as being worth $8.5 million. There are only 48,000 claims made on the initial settlement by class members for claims related to the class period relating to the class claims. Under the settlement, under Section 1.E4 of the settlement, which is at 59 to 61 of our record, anything that doesn't get paid out goes into, quote, unquote, a second settlement fund that is made to pay requests for refunds after the class period closes. Now, this is all very complicated because this is Groupon. There are third-party vendors involved. But all of that complication helps to create the illusion of relief. I'd like to simplify it by an analogous hypothetical settlement. Say it involves AT&T Mobility being sued because they're overcharging customers $5 for some fee or the other. There's a class action settlement. Under the class action settlement, analogous to this one, $8.5 million fund, quarter reserved for the attorneys, 48,000 claims made paying out a quarter million dollars to the class. And then the leftover money, class members are allowed to make a second claim if AT&T Mobility overcharges them $5 again. Then they can make the claim for the $5 refund of the $5 overcharge. But that's not a $5 benefit. The overcharge creates a new cause of action, whatever the merits of that are. And they can make a claim for that $5, but they're not better off by $5. They paid AT&T Mobility $5 for the right to make a $5 claim on the settlement fund. And it's that illusion that was objected to below that the district court failed to address, and that we're contesting on appeal. This may be a district judge concern, not a court of appeals concern, but you're really, I mean, of course you have to worry about collusion between lawyers. And if the fund is overvalued, the 8.5, that affects attorneys' fees, which draws into question the, you know, whether or not there may have been collusion. I appreciate that. But as a practical matter, you know, didn't class counsel give $2 million worth of benefit to the class? I mean, they've got injunctive relief, they've got Groupon to change its practices. It's got a settlement fund, and certainly it's going to be used because it's, and there is, frankly, and I don't, this is not personal, but there is a problem in MDL litigation of the effect of parachutists. You know, people who come in and object and try to benefit their own clients by objecting. As a practical matter, why isn't this a perfectly reasonable disposition of the case? I mean, it was mediated throughout, it was, there is money being paid, practices did get changed, and I think on the lowest star, I think it's less than 75 percent is being obtained. Now, maybe I'm being too practical, maybe I'm being too much like an MDL judge, but I don't quite understand what the problem is. Well, if there's a problem with bad objectors, I think you address that through the rules. But there are still absent class members. So let's go to your question. I don't think it's just a question of collusion, because both the class counsel and the defendants have the incentive to structure the settlement to create the illusion of relief without any sort of backroom deal, without any sort of shenanigans that a mediator would recognize. Just simply by making the settlement really complicating so that there isn't actually cost to the defendant, there isn't actually benefit for the class, but there's the illusion of benefit that creates the supposed right to attorney's fees. Why is it only an illusion? Because class members don't get it unless they pay money to Groupon in the first place. So they're not getting any benefit. If they are wronged because they can get a refund, they have a separate independent claim. And to create this new claims process for new claims, that is not compensation for the waiver of old claims. It's Groupon avoiding new lawsuits in a new case, or it's Groupon creating goodwill for itself with a refund program that the record shows they give gratuitous fees. They give gratuitous refunds all the time, except now they get accredited against the settlement fund. Go ahead. Benefits are going to class members, some of whom may be injured more than others. It's true that the time period for the class has expired, and they're giving benefits to the class members who continue to be injured beyond that time. It's not like the normal objection, that the class members aren't receiving it. And this may not be the legal answer, but the instinctive reaction to this sort of thing is that it is all going to the class members. It's not being diverted for improper purposes. And you even objected to a side prayer, which seems to me to be a decent way of helping people to avoid these kinds of problems. It's not only the class members who benefit, everyone benefits when you get a major group to terminate an improper practice. It's hard to react instinctively. This is what we're disagreeing about, though, that it is a benefit, because the class member who gets the $20 refund, that's 20 new dollars that they paid to Groupon. Then they can make a second claim, and they can get the $20 back for a Groupon that they never used. And then it's credited against the $5 million or so that's left over in the settlement fund. Counsel, Judge Gould, could I ask you a question that might clarify this for me? Is there any part of that second settlement fund that represents or on which Groupon is drawing where they make refunds, where the refunds were something they would have made under their own power? And that's the nature of our objection, that many of these refunds would have been given anyway, were already being given, were already being given. Well, Mike, I was asking a question. Yes. The answer is we don't know, because they haven't decided how to distribute that $5 million. And there's never going to be any audit over whether the $5 million is being given to class members who have new grievances that aren't, that are being treated differently than the $5 million. And the answer is, it's not new money going to the class, because it can only go to the class. What would you ask the district court to advise on if under Bluetooth we said the inquiry wasn't going to the class? It wasn't thorough enough, and there had to be more. What would the district court do? You look at the actual benefits to the class, and if the problem is, is that the benefit to the class is being spread over five, six, seven years, you pay out the attorneys over time, and the Federal Judicial Center manual recommends that as a possibility. And that's In-Ray Baby Products, 708F3163. It's not just Bluetooth. It's other circuits have recognized. You can't just look at the supposed maximum potential relief of the $8.5 million. You have to look at the actual amount that the class will receive. But if they had said, instead of, with this extra amount that you have these future claims, you can instead of looking at the actual amount that the class will receive, you can look at the actual amount that the class will receive. Instead of saying you can either go to our fund or to Groupon, they had just said, don't go to Groupon, you go to the fund. That would have been all right. Well, no, because it's still the same problem, that the class members only get money that they have already given to Groupon that's new, and therefore it's a net of zero to the class. Okay. Well, that's a clear answer. I'm not sure it gets to the result, but that's a different question. So your objection would have been just as strong if instead of saying either with these extra claims go to Groupon or the fund, you would just have said, take them to the fund. You would have objected to that. Yes, and we do. I'm well into my rebuttal time. Well, we'll give you your rebuttal time. Good morning. How do you understand the settlement funds work? I'm not sure. Sure. May it please the Court, good morning, Kevin Green for Plaintiffs Appellees, Class Counsel, and the settlement class. Good morning, Judge Gould. The second, there were a number of factual misstatements in the opening presentations, and one I really need to correct at the outset. It's a premise for Mr. Frank's comments, and that is that there were only 48,000 claims. Nothing has happened because of these appeals. The settlement has not been implemented, and that's under the terms of the settlement. Brown excerpts of record, pages 31 to 33, and so no claims have actually been made on it yet. The 48,000 number refers to claims made before the claims period, which has yet to begin due to the appeals. Claims made voluntarily by class members in response to the settlement website before the settlement claims process has even gone into effect, which has yet to happen. So I think the suggestion, perhaps it was unintentional, is that 48,000 is the total number of claims on this settlement. Far from it. That's just the start. That's 48,000 people that got on the website as soon as it was posted and made claims before they could actually do so. All right. The settlement funds and how it works. Well, first of all, I'm glad that Cypre I think is off the table. It's a non-issue. It was taken out of the settlement. Baby products is irrelevant for that reason. The settlement funds provide, well, the initial provision is class members receive a settlement claim form once the settlement is implemented from Groupon, or from, I'm sorry, from RUST, the settlement administrator, a settlement claim form that allows them to apply for a settlement voucher. They receive a voucher, they go to a merchant, and they are allowed to submit the settlement voucher form to the merchant. And the merchant can accept or refuse it, or if the merchant is out of business. That's when you get to the next fund. Now, if the merchant refuses the voucher, then the class member can make a claim on the settlement fund for the amount of the voucher, the settlement voucher, plus 20 percent. I don't understand that. What is promotional value? What's the 20 percent? I just don't understand. All right. There's the purchase price of the voucher. Let's say you buy a voucher for $25 to the gap. And it's something that you can use at the gap within 30 days, 90 days for $50. So the promotional value is 50 in that hypothetical example. Okay. So you get to the settlement fund if you've received a settlement voucher and the merchant has refused it or the merchant has gone out of business. Then you can make a claim, and you get real cold, hard cash. You get a check back from the settlement administrator. Now, was there some kind of analysis done as to how much of the first settlement fund would be used? I just don't know. What's the record show about that, trying to project how much of the first settlement fund would be used up? It's a fair amount of speculation. The thought was that quite a bit of it would be used up, and I think more so, because we're years down the line. And we're really talking about $6 million, right? What's that? $6 million, maybe a little lower with claims administration. But I think more of that gets used over time as people, when the settlement is eventually implemented. More of the fund gets used? More of the fund gets used because the first step is you get a settlement voucher and you go to a merchant. And this was negotiated in 2011, 2012. Is that not a coupon? I think I know your position, but I want to make sure I understand it. Why is that, the first settlement fund, why is that not a coupon? There's a distinction between coupons and vouchers, and it goes to the core of what Groupon does as a business, and the defense counsel, Mr. Panikowsky, is going to address that. A coupon is quite simply a discount for a future purchase. And what you get with Groupon is you get a voucher that allows you to go to the GAP and buy a pair of jeans for $50 when you pay $25. And it's what class members have already paid to Groupon for something that they wanted to buy, and that is the voucher. So explain to me the second fund. We're going to speculate that something's left over. Right. Now, if there's a remainder from the first settlement fund, then the second settlement fund is used for purchases by the class members, by members of this class, not any Groupon customer, by class members. All the benefits are going to the class members. The purchases that they make of Groupon vouchers that they can just simply submit to the fund and obtain a refund. No questions asked, no expiration date, and contrary to what was said, if there is a remainder on the second settlement fund, it does not revert to Groupon. It's used until it's depleted. And how is it used? I'm sorry, I just want to be clear. How is a second settlement fund used? I'm a member of the class. What do I do and what do I get? If you buy a Groupon voucher after December 1st of 2011, and you want to redeem it for a refund, and there is a second settlement fund, that's what it allows you to do, and you're a member of this class. So it is a future benefit, and I want to respond to Mr. Frank's point. And the other... It doesn't go to Cypre, it doesn't go to Groupon, it goes to the class. Now, the allegation is made that it goes to Groupon, and I'm not sure why. I think the allegation is, isn't the contention made that the Groupon benefits? Groupon can apply to the second settlement fund in response to the refunds, but only to that extent. There isn't a reversion of funds that goes to Groupon from the second settlement fund. The people who buy from Groupon after the December 2011 date can either go to Groupon or it can go to Cypre. And if they go to Groupon, Groupon can then obtain reimbursement for the fund when they have paid off that subsequent claim? That's correct, Your Honor. And is that a policy of Groupon that would exist regardless of the settlement? No, I don't believe so. And a mischaracterization here is that there isn't injunctive relief that's of some value of defense counsel who are some of the best you can litigate against, don't concede lightly. I mean, said at the final approval hearing, this is a huge deal, a change in Groupon's practices going forward. And I want to respond to the point that, well, what if you don't want to continue to do business with Groupon, and how does that benefit you? And that really goes to the standard of review, I think, and that is that there needs to be a clear abuse of discretion. And that means something that's really glaring, that stands out, that's wrong, either substantively or procedurally. And that provision in particular is within the realm of reasonableness and in fairness, certainly on the public view. Are these subsequent violations in violation of the injunction that you obtained? That's not the basis for them, Your Honor. It wouldn't be. Well, could someone who's not a member of this class go to Groupon and get that same repayment that the class members can get if they go to either Groupon or the fund? Well, Groupon has what's called the Groupon Promise, where they will endeavor with their customers to make a payment. Right. Any customer can go to Groupon at any time, whether they're a member of this class or not. It doesn't mean that they will get relief. The Groupon Promise is not an assurance of a refund. And that's part of the reason we brought this case and why there's meaningful relief here. Are there any findings that bear on the extent to which the Groupon Promise would have provided the relief that comes, I don't know, of the second settlement fund? I think the district court's orders touch on that, the orders on review. I don't have that on my fingertips, but there is a difference because Groupon isn't required to provide any sort of refund, I mean, through a fund or otherwise. And this is a change in their practices, the injunctive relief for three years, where Groupon customers, members of the class, can apply, no questions asked, and get a refund on a voucher. So they can go to Groupon, and Groupon's practices have changed as a result of this lawsuit and may continue to change. But again, a lot of this is how much of the fund will be depleted. We don't really know because the settlement hasn't been implemented. And on the parachuting question, the Therese case, for example, is a case where the settlement has been implemented. And this court discusses the right to opt out of class actions. And it would be easy for me to say that objectors shouldn't be able to appeal and object and all that. They have all those rights. They have the right to object and be heard, and they have that here on all the settlement terms. What they don't have the right to do is to rewrite the settlement and identify every single provision that, in their view at least, ought to be a little bit different. And one emphasis... Are you dividing your time with your co-counsel? I'm getting close to it, and this is my final point, Your Honor, that if they were this dissatisfied with this settlement, which on the whole is well within the range of fair, adequate, and reasonable, they could have opted out. And it's something worth mentioning, I think, possibly in the Court's opinion. Thank you. Good morning, Your Honors. Stanley Penikowsky from DLA Piper. I represent Groupon and the other defendants' appellees. Your Honors, there are a number of questions with respect to how the Second Settlement Fund works. And I would like to be clear that the Second Settlement Fund provides benefits to class members that are not afforded by the injunctive relief, and are not afforded by Groupon's existing business practices. The reason why we have a Second Settlement Fund is because it is possible that some of the $8.5 million will remain after the First Settlement Fund has closed. The question is then, how do we distribute the entirety of that benefit to class members now that the CyPRI provisions have been stricken? So under the Second Settlement Fund, a class member who purchased a Groupon voucher after December 1, 2011, can submit either directly to the claims administrator or to Groupon, which would then have to forward a request for reimbursement to the claims administrator, in order to get a refund on demand of the purchase price of their Groupon voucher. This is not part of the injunctive relief. The injunctive relief deals primarily with expiration dates and disclosures. It is also not part of the Groupon promise, which is a customer satisfaction guarantee, where if a purchaser of a Groupon voucher uses it or tries to use it with a merchant partner, and for some reason they are dissatisfied with the goods or services, Groupon will work with that customer to try to make it right. Neither the Groupon promise, nor any other policy of Groupon, affords what the Second Settlement Fund does, which is a refund on demand. Your Honor's also... Yes, Your Honor. There is both a purchase price amount and a promotional value to the voucher. So taking the example of you purchase a Groupon voucher to the GAP for $25, and you can take it to the GAP and get $50 worth of merchandise. $25 is the customer purchase price value. The additional $25 is the promotional value. Under the Second Settlement Fund, if you bought that Groupon voucher and you paid $25 for it, you can, for any reason at any time, go to the claims administrator or go to Groupon and say, I want a refund of this $25. It could be because you changed your clothing preferences. You no longer want to shop at the GAP. It could be because the GAP is too far for you to travel. It could be that the expiration date for the promotional value has passed, and you don't want to just use the purchase price. You want to get that money back and put it to some other use. It's an extraordinary benefit to the class that is not something that's part of any existing Groupon policy. But Groupon does hope that the members of the class will ask it to make the refunds. Otherwise, that would be, if they ask the settlement administrator, they've already paid the money. I'm just trying to figure out what the distinction is as to who the refund request is made to. I think that Groupon does benefit. It will take some of the $8.5 million, whatever is the remainder of the $8.5 million, if the request is made directly to it. Your Honor, Groupon is indifferent to how the request is made. When the first settlement fund is established, Groupon is going to pay $8.5 million into it, and it won't get any reversion of that. And then the availability of submitting a reimbursement request from the second settlement fund to Groupon directly is simply provided as a convenience to class members. There's obviously some detriment to Groupon when the request gets submitted directly to Groupon because there will be some additional administrative work for Groupon. And then when Groupon submits that request for reimbursement from the second settlement fund after it already paid a refund on demand to the customer, that reimbursement to Groupon is subject to the approval of the claims administrator. This is all set out in great detail in excerpts of record, pages 46 to 49 of the Brown Objectors excerpts of record. Is there a difference between what a class member would get if he went to Groupon for money eventually to come from the fund and what he would get if he were not a class member? Yes, Your Honor, there is a difference because you have to be a class member in order to be able to get this refund on demand from the second settlement fund. If you are not a class member, then you have to go to Groupon and either make a claim under the Groupon promise. There's nothing in theory that prevents a customer from asking Groupon for a gratuitous refund. Obviously, in the consumer world, you can ask for anything you want, you just might not get it. The Groupon promise doesn't guarantee the non-class member the same treatment that a class member gets? That is correct, Your Honor. As I understand what you said, if you're a class member, you can get the money back for any reason or no reason. If you're a non-class member, what do you have to do under the Groupon promise? The Groupon promise says if you, the customer, are honestly dissatisfied with the goods or services you receive from the merchant when you redeem your Groupon voucher, we will work with you to try to make it right. So it may, for example, be an instance where you use the voucher at a restaurant and you got food poisoning. Hopefully that won't happen, but it's that type of thing. Or if you purchase goods and the goods didn't work and the merchant partner wouldn't make it right. So it's very similar to... Your Honor, that is a claim that a non-class member can make under the Groupon promise. And Groupon says it will work with you to make it right. It doesn't even guarantee a refund in those instances. And the Groupon promise certainly doesn't say that anyone is entitled to a refund on demand. So if a non-class member wants to get a, quote, gratuitous refund from Groupon, they're going to have to try to negotiate that. There's nothing obligating Groupon to give it. There's no already set aside fund of money that would permit that. By contrast, when you're a class member and the Second Settlement Fund is established for these purchases occurring after December 1, 2011, you can go to Groupon or go to the claims administrator and you can get a refund for any reason. It could be you simply changed your mind and you didn't want to use it. Does the record show how many refunds are being given by Groupon just in its normal course of business? Your Honor, there is no evidence in the record on that point. I'm still trying to figure out going to Groupon as opposed to the claims administrator. Wouldn't it solve a potentially major problem in the settlement to say Groupon cannot collect under the Second Settlement Fund? Your Honor, it wouldn't solve any problem because that is not a problem. In fact, it's an additional benefit to the class because anybody who's purchased a Groupon voucher has already dealt with Groupon, and it gives the class members an opportunity. I understand that, but doesn't Groupon already set aside the 8.5, and we're assuming there's something left of that? Your Honor, because the fund has not opened yet, nothing has been paid out yet. We're waiting for the resolution. Assuming that there will be something in the Second Fund. Yes, Your Honor. If you assume there's something in the Second Fund, Groupon has already paid that. It's paid at an escrow or somewhere. Yes, Your Honor. If the claim is made to the claims administrator, it comes out of the 8.5. Yes, Your Honor. If the claim is made to Groupon, and Groupon has to make the refund but can then seek reimbursement from the fund, Groupon has gotten an advantage. No, Your Honor. Groupon has not gotten an advantage. Your Honor, I see my time has expired. May I please continue to answer? No, Your Honor. Groupon will not have gotten an advantage because when the class member came to Groupon to request that refund, if it's not under the Groupon promise, they're just seeking a refund on demand because they changed their mind. If Groupon gives them that refund, say it's for $25, Groupon has paid out $25 that it never would have paid out, but for this settlement agreement, but for the rights that were secured by class members. So when Groupon gets a reimbursement from the Second Settlement Fund, it's because it had already paid out that amount that in very many of these cases, it would not have paid out otherwise. Okay. Counselor, you said very many of these cases, and that's I guess the crux of what's bothering me on the findings. Is there, there's no evidence in the record what percentage of Groupon certificates are not honored. Is that right? Correct, Your Honor. There is not evidence in the record on that. Then if a Groupon certificate just was not honored, like the GAP said, we're not going to take this certificate, if they wouldn't accept the voucher, then under Groupon's policies, I would assume to have a business model, they'd have to be making those good, right? Yes, Your Honor. If the merchant were to refuse to accept the voucher, one would think that there would be a customer relations reason to work on that, but nonetheless, it's not something that Groupon would be obligated to do. I understand it's not obligated, but in terms of the history of Groupon, is there evidence from which someone could make a prediction of how often that would be likely to happen, and how much of this Second Settlement Fund is really stuff that Groupon would have paid anyway? Your Honor, there isn't any evidence in the record on this point, nor was any evidence required, because the approval of this settlement agreement, including the Second Settlement Fund, was well within the discretion of the district court. I can only provide anecdotal evidence, Your Honor, from my experience as a frequent Groupon customer, and I can say that I've redeemed many Groupon vouchers. I can also say that there are Groupon vouchers that I have, where today I very well may want my money back, and I'm not going to make a claim against my client, but absent this mechanism where you can simply get a refund for any reason from the Second Settlement Fund, it's highly unlikely that people are going to go back to Groupon asking for it, and even if people do go back to Groupon asking for a refund simply because they changed their mind or the promotional value has expired. While we don't have the evidence on that, there's nothing obligating Groupon to give them that refund, and I think that Groupon also has strong business incentives not to provide refunds on demand, because then that could catch fire and people could be asking for a lot of money back for Groupon simply because they changed their minds, and that's part of the reason why the Second Settlement Fund is limited to the class members, and we know that the Second Settlement Fund will be exhausted. It says at the Brown excerpts of record, pages 47 and 73, that will happen. It says distributions will occur until all funds in the Second Settlement Fund are paid, and it also says claims will be accepted until the Second Settlement Fund is fully depleted. So we know that it will be depleted. We do not know when, and we don't have evidence to determine exactly what the allocation of percentages to different reasons, why a customer may want a refund. However, we do know that this is a benefit that's afforded only to class members, and a benefit that they would not have but for the settlement that the district court approved. Let me ask a fundamental question. I know you're well past your time. All of this discussion relates only to determining the reasonableness of the attorney's fees, correct? Your Honor, I understand objectors to be objecting to the Second Settlement Fund generally, and I think that those arguments are overlooking the standard of review. We're talking about $8.5 million, and it's 25 percent of $8.5 million is the attorney's fees. Yes, Your Honor. And the concern is that that might have been, and I'm not asking you to say that it was, but there's concern that that might have been collusive. Your Honor, to the extent that that's a concern, first, I can represent with certainty that there was no collusion here, and I would also like to point out that if you were to look at the Lodestar as a check, 72.5 percent, and also we do know that the entirety of the $8.5 million, less the attorney's fees and expenses, will eventually be disbursed to class members, either by the claims administrator or by Groupon in then getting reimbursement. So we do know that this fund eventually will make its way into the hands of class members, and we came up with that mechanism precisely to make sure that this money would go to the class members. Thank you, Your Honors. Thank you, counsel. In 1967, a class member explained why he objected and stated, I have three Groupons that I asked for refunds for. Two of them, they gave me the refund right away. The third one, they said, this is subject to a class action settlement. You have to make a claim on the class action administrator. And that is the nature of why the objection is both to the 23E and to the 23H fees. Because the relief is largely illusory for the reasons Judge Gould elucidated, many of these payments were payments that were going to be made anyway. And the district court said, well, there are some people who didn't get refunds. But there was no finding what percentage of refund grants were getting requested, and even if under the new settlement it goes up to 100 percent. What do you want the district judge to do? What kind of evidence was he supposed to base this all on? Well, the problem is class members are coming in and saying, look, Groupon was already doing this. This isn't a new benefit to the class. There's no incremental benefit here. And if the plaintiffs say, well, some people weren't getting refunds, so therefore there is an incremental benefit, it's very simple to say Groupon. How many refund requests? Isn't it common sense that Groupon is not going to give refunds on demand? I mean, whatever the business plan is, it can't possibly be that. That is correct. And we're not saying there's zero benefit on appeal. But it's not $8.5 million of benefit, because if the old refund rate is 90 percent, then 90 percent of these refunds would have been granted anyway, and the class is really getting 600,000 rather than 6 million. But it's going to continue until all of the money is used up? Yes. I guess what you're worried about is Groupon is going to change the Groupon promise to make it? No, that's not the concern. The concern is that Groupon is giving away money that it would have given away anyway without any lawsuit, without any class action settlement, and then saying this is a settlement benefit, giving you something we would have given you anyway. And the district court made no effort to determine what the magnitude of that is. And maybe Groupon only gives 5 percent refunds, and the class members who said they were getting gratuitous refunds were just coincidentally really lucky, and the complaint is de minimis. But there were no findings. The 48,000 claim number, that comes from the district court opinion at Hull ER 220. I don't think I misrepresented anything. The problem here is that the settlement was structured so that the judge would never find out how much the class was actually receiving. And that's the same problem that Judge Posner complained about in Eubank v. Pella, 753F3718, where, again, they set up a claims process. The claims process wasn't going to end until several months after the fairness hearing. The party said, don't worry about it, Judge, we're going to distribute $90 million on appeal. They actually looked into it, and it was far less than what the attorneys were receiving. And that's the same sort of disproportion we're complaining about here. And everybody here is at a bit of a disadvantage. The four best cases on this were all decided after the opening briefs were filed. I tried to address them in the 28J letter I filed last week. If the court would like additional briefing, I can submit something short on short notice. I'm happy to answer any other questions you might have on this. But the problem here is that the relief looks to be largely illusory, and the district court didn't make the findings necessary to determine whether the class was actually getting a new benefit under this settlement. Thank you, counsel. Thank you, Your Honor. The case is argued and will be submitted. The court will stand in recess for the day.
judges: Motz, Reinhardt, Gould